[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was returned to court on March 4, 1997. Plaintiff's complaint dated February 5, 1997 consists of three counts:
1. The first count refers to the plaintiff Rosa Spencer;
2. The second count refers to the plaintiff's dog, Tammi;
3. The third count refers to the plaintiff's dog, Charlie.
All three counts were generated by an incident which occurred on May 24, 1996 at 4 Akron Street, Meriden, Connecticut at approximately 2:00 p.m. The plaintiff alleges in her complaint that at approximately 2:00 p.m. she was exercising her two small CT Page 13283 dogs in the yard attached to her apartment when two large dogs owned by the defendant jumped over the fence separating defendant's property from plaintiff's yard and attacked plaintiff's dogs. In the resulting melee the plaintiff was knocked to the ground by one of the defendant's dogs while she was attempting to protect her Chihuahua dog.
The plaintiff alleges in paragraph seven of her complaint that as a result of the negligence and carelessness of the defendant owner and keeper she was caused the following injuries;
a. Temporo Mandibular joint symptoms:
 b. Severe lacerations, contusions and abrasions throughout her body;
c. Cervical injuries;
d. Lumbar injuries;
e. A severe shock to her nervous system.
The plaintiff claims as a further result of this occurrence that she has occurred and will continue to incur further medical expense in the future for her injuries. Plaintiff also alleges that she has been and in the future will be limited in the enjoyment of those activities of life to which she has previously been accustomed.
The defendant's answer admitted that he was the owner and was in charge of maintenance and/or control of two large dogs both of which resided with him on property owned by him which was adjacent to the property occupied by the plaintiff known as 4 Akron Street, Meriden, Connecticut. The description of the incident, the proximate cause of the plaintiff's injury and losses, the plaintiff's allegation of negligence, the claim of injuries, future medical expense and limitation on the activities of life of the plaintiff were placed in issue by the defendant's answer.
Defendant also filed a special defense asserting that the plaintiff's comparative negligence should bar or reduce any recovery of the plaintiff. Plaintiff denied each and every allegation contained in the defendant's special defense. CT Page 13284
Plaintiff claimed the matter for the jury trial list on December 15, 1997, the court granted defendant's motion to strike the case from the jury list on January 8, 1998.
The court held a bench trial on September 23, and September 24, 1999. The plaintiff presented evidence to the court on the first count only. At the conclusion of the plaintiff's evidence, counsel for the plaintiff and the defendant represented to the court that plaintiff had received compensation from defendant for damages sustained by her two dogs. Accordingly the court dismissed counts two and three.
At the trial the plaintiff testified and presented evidence from her family physician Dr. Brumberger and she also offered a substantial number of reports from other medical providers. At the time of the incident the plaintiff was forty-eight years old, a social security recipient who had been disabled since approximately 1974 and on social security since that date except for a period of ten years when she was married. She resumed her status as a social security disabled petitioner at approximately 1984. The plaintiff's disability stems from a lumbar discectomy preformed upon her approximately twenty-five years ago. This operation has left her with a long history of recurrent back pain. At the trial the plaintiff testified she is constantly troubled with back pain which originated in the incident in question and is also troubled with pain in her right jaw which also originated in the subject incident. Plaintiff also claimed that she suffered a considerable amount of emotional distress from the trauma of the incident of May 24, 1996. During the trial the plaintiff endeavored to prove that the traumatic incident of May 24, 1996 has caused her pain, suffering, mental distress, and anxiety since the date of the incident to the trial date and for some indeterminate date in the future. The plaintiff denied that any of these conditions were related to a pre-existing back condition.
The defendant's position challenged both the plaintiff's claim for an increase in her permanent partial impermanent rating of her lumbar spine and her claim for lengthy period of pain and discomfort associated with her temporo mandibular joint claim.
On the day of the incident the plaintiff visited the Veteran Memorial Medical Center, in Meriden at approximately 5:25 in the afternoon some three hours after the incident. She complained of right jaw pain and pain in her back; the history taken indicated CT Page 13285 that she was presently taking medication for back pain, Naprosyn 500 mg twice daily and was also taking Imipramine for emotional upset. The diagnosis contained in the emergency room report was back sprain and acute mandible contusion. The report also indicated that the plaintiff could open her mouth freely, she was talking okay, she had no ecchymosis through the jaw, no redness or clicking, and that her neck was supple and not rigid and there were small patches of scratches on the dorsal aspect of her right hand.
The plaintiff was discharged at 7:00 p.m. with a prescription for Ibuprofen to relax her muscles; the x-ray report in the hospital records indicates that her mandible was intact without evidences of fracture. It further identified an old metalic suture within the left mandibular body and noted that the mandibular condyles articulate normally bilateral.
On May 29, 1996 the plaintiff visited her family physician, Dr. Brumberger. Dr. Brumberger found her emotionally distraught. She told him she had wrenched her back during the episode of May 24, 1996. In his initial report he noted that she suffered from chronic back symptoms. This report is silent as to any complaints with regard to her right temporo mandibular joint. The doctor increased her prescription of Imipramine in an attempt to help her with her emotional upset and he agreed to see her again in his office in about three weeks. Thereafter Dr. Brumberger continued to treat the plaintiff for these complaints and for other non-related conditions for a long period of time. In August of 1996 he referred her to the Easter Seals Rehabilitation Center for physical therapy to her back. The report from the Easter Seals Center indicates that the plaintiff received five physical therapy treatments at the Easter Seals Center and was discharged on September 6, 1996 able to resume her normal activities.
In a report prepared on September 28, 1998 Dr. Brumberger first mentioned the plaintiff's problems with temporo mandibular joint dysfunction, he also described her injuries as right flank pain and right para-spinal spasm, cervical sprain of the right and left trapezius and noted that these complaints surfaced after the incident of May 24, 1996. Dr. Brumberger continued seeing the patient through October of 1998 rendering treatment to her for stomach upset, gastritis, nocturnal panic attacks, another dog bite in June of 1997, a flare up of her temporo mandibular joint, a peptic flare up, a head injury when a window fell on her head, and esophageal narrowing. CT Page 13286
In December of 1997 Dr. Brumberger referred the plaintiff to the Easter Seals Rehabilitation Center for therapy for her temporo mandibular joint. The report from the Easter Seals Rehabilitation Center indicated that she was treated three times and discharged on December 16, 1997 able to open her mouth fully with less pain.
In September of 1998 Dr. Brumberger referred the plaintiff to Dr. Zimmering, an orthopedist for an evaluation of her back complaints.
During the time that the plaintiff was seeing Dr. Brumberger she was also seeing various dentists for complaints of pain in her right mandbular joint which she says began with the trauma sustained on May 24, 1996 when she was attacked by a dog and knocked to the ground. A report from Dr. Bailey, dated December 9, 1997 indicates that the plaintiff was seen by this firm in January and March of 1997 complaining of pain in her right mandible which she says began with the trauma sustained in May of 1996 when she was attacked by a dog. At that time Dr. Frank felt that her periodontal condition may have been contributing to her pain and treated her for periodonititis. She was seen again on October 3, 1997 when she complained of pain in her right mandibular joint. Dr. Bailey reported that he found severe pain in her right temporo mandibular joint and right masseter and pterygoid muscles and he prescribed a muscle relaxant medication and made an orthotic appliance to correct clenching and grinding of the patient's teeth. The doctor saw her several times and he noted that there had been some relief of acute pain but the chronic dull pain still persisted and she indicated that she was undergoing physical therapy at the Easter Seals Rehabilitation Center to relieve this. Dr. Bailey rendered an opinion that the plaintiff's continued pain is due to trauma caused by the dog attack and the emotional stress which is ongoing. Dr. Bailey saw the plaintiff next on March 6, 1998 at which time she seemed much better but not completely cured and he recommenced more physical therapy by Dr. Thomas Collette. In June of 1998 he made a new appliance for Rosa since she had misplaced the first one.
During the time that the plaintiff was seeing Dr. Bailey in December of 1997, she was also seeing a Dr. Rozen, an oral and maximal facial surgeon. Dr. Rozen's report submitted by the plaintiff is barely legible but it does indicate that he saw Rosa Spencer on various occasions specifically December 18, 1997, CT Page 13287 January 6, 1998, January 27, 1998 and on February 9, 1998. This doctor also recommended that the patient see Dr. Collette. Dr. Rozen ordered an MRI of the patient's temporo mandibular joint. This procedure was performed on January 30, 1998. The report concluded that the patient had normal dynamic images of the left TMJ, poor translation of the right mandibular joint condyles which may relate to deceased mouth opening.
Dr. Zimmering saw the plaintiff on September 29, 1998 on a referral from Dr. Brumberger. His report indicates that plaintiff had lumbar disk surgery about twenty-five years ago and that he had seen her for complaints in May of 1995 for complaints of back pain radiating into the legs. She complained to the doctor that her present problem dates from May of 1996 when she says that an attacking dog jumped on her and she fell to the ground. The doctor reported that the patient has a long history of recurrent back pain; in order to rule out the possibility of additional disk pathology he suggested an M.R.I. scan. The M.R.I. scan was completed by the next visit with the doctor and in his report of October 12, 1998 he stated that the patient was still complaining of back pain, that the M.R.I. scan found no evidence of disk herniating or canal stenosis but did find some lumbar degenerative changes as expected. The final report of the doctor is date December 24, 1998 at which time the plaintiff was still complaining of pain. A review of his past records indicated to the doctor that the patient on several occasions has returned for flare ups of back pain including radicular systems. Dr. Greco a member of the group had seen her in 1992 for this problem and Dr. Zimmering recalled seeing her in 1995. The doctor noted that there is no indication that further medical intervention is going to make a difference in the patient and that the patient had reached maximum medical improvement. The doctor concluded that the plaintiff had a pre-existing deficit in her lumbar spine which amounted to a thirteen percent permanent partial impairment. The doctor concluded that as a result of the incident of May 24, 1996 the plaintiff had sustained an additional four percent permanent partial impairment of her back.
The defendant offered testimony from Leonard Skope an oral surgeon from New Haven, Connecticut, Dr. Skope examined all of the records pertaining to the temporo mandibular joint claim of the plaintiff, specifically the report of Dr. Bailey and Dr. Frank and the notes of Dr. Rozen and the first report of injury. This report noted the absence of any objective signs of injury to her right mandibular joint and he commented on the fact that the CT Page 13288 plaintiff had not reported an injury to her jaw in her first report to Dr. Brumberger. Dr. Skope reviewed an x-ray taken at the Veterans Memorial Medical Center on the day of the accident and also the M.R.I. taken of the plaintiff's jaw on January 30, 1998 at the request of Dr. Rozen. Dr. Skope testified that on the basis of his record review he was unable to make a reasonable causal relationship between the present complaints of the plaintiff with regard to her temporo mandbular joint and the incident of May 24, 1996. Dr. Skope also testified that the presence of an old metalic suture within the left mandible body was indicative of a pre-existing condition in this area.
The defendant offered the expert testimony of Dr. Peter R. Barnett an orthopedist. Dr. Barnett had prepared a report dated April 9, 1999 based upon a record review of the reports pertaining to the plaintiff which had been disclosed to the defendant. Dr. Barnett also conducted an independent medical examination of the plaintiff on July 21, 1999. Dr. Barnett reviewed the reports of the emergency room at the Veteran Memorial Hospital, the office records of Dr. Bruce Brumberger, the office records of Dr. Paul Zimmering, the records of the Easter Seals Rehabilitation and Physical Therapy dated August 23, 1996 and October 30, 1997. He also reviewed a report of Continuing Disability Interview dated March 12, 1976 which report was submitted to the Social Security Administration, a report of the Disability Determination Services of the State of Connecticut an organization which provides disability evaluation services for social security dated May 10, 1996 and a report of an examination conducted for the Connecticut Bureau of Disability Determination prepared by Dr. Micha Abeles on June 7, 1996. This latter report indicates that Ms. Spencer complains of back pain which she dates back to January, 1973. She told Dr. Abeles she had a herniated disk and had to undergo surgery and despite surgery she suffers from continuous pain, describing the pain as being all over involving the low back but without any radiation into the buttock or the legs. The plaintiff also told the doctor that she had stomach problems but that she had no difficulty with walking or standing but that bending at the waist leads to back pain. She also told the doctor that she could not lift anything more than fifteen pounds, that although she could do her own housework she needs help with grocery shopping because she cannot lift the bags.
Although this examination was conducted shortly after the incident of May 24, 1996 the plaintiff made no mention to Dr. CT Page 13289 Abeles of the incident or any aggravation of her pre-existing back condition resulting from the fall to the ground. Neither did the plaintiff indicate to the examiner that she had any difficulties with her temporo mandibular joint, although she was complaining on or about that time that she had injured this joint in an incident of May 24, 1996.
The report of Continuing Disability Interviewed dated March 12, 1996 indicates that the plaintiff is disabled because of back trouble. The plaintiff indicated that she had pain all the time, that she was taking Naprosyn for her back difficulties and Imipramine for other problems of a non-physical nature. She further indicated that she had been advised not to do any lifting by Dr. Brumberger. Plaintiff signed this report on March 12, 1996. In a further report to the Bureau of Rehabilitation Services received by that agency on May 10, 1996 and plaintiff was requested to describe any changes in any routine since her condition began. The plaintiff replied that "nothing everything is still the same worst I think" "even when I go shopping or do laundry and housework or anything I do my back hurts," the plaintiff stated that "she couldn't walk to much because her back hurts," the plaintiff made further statements in this report in her own handwriting which indicates she was having a considerable amount of difficulty with her back prior to the date of May 24, 1996.
Dr. Barnett noted that the patient was discharged from physical therapy and allowed to resume normal activities after five treatments on or about September 6, 1996. He also noted that the patient went back to Easter Seals Rehabilitation for further therapy on October 30, 1997 at which time she reported increased low back pain after lifting at home. When the plaintiff was examined by Dr. Barnett on July 21, 1999 she complained to the doctor of the pain in the right lower back with radiation down the postural aspect of the right lower extremity and intermittent numbness and tingling in the right leg. The patient told the doctor that she was unable to recall the last time her back had caused any problems prior to the incident in question.
Dr. Barnett found a conflict between the patient's past medical records and the history she gave him. He testified that the documents record chronic and prolonged complaints and difficulties with the lower back prior to the incident in question. He concluded that the patient had responded to the physical therapy following the incident in question but the CT Page 13290 records suggest that an incident in October of 1997 exacerbated the plaintiff's lower back condition resulting in additional complaints necessitating additional care. Dr. Barnett testified that the plaintiff does have an ongoing difficulty with her lower back but he concluded that the plaintiff had extensive pre-existing condition with her lower back and based upon the review of the records and his own personal examination that he could not state with any medical certainty that the incident of May 24, 1996 resulted in any permanent worsting of the plaintiff's pre-existing condition.
The plaintiff endeavored to prove that the traumatic incident of May 24, 1996 was the sole cause of her pain, suffering, mental distress and anxiety since the date of the incident to the trial date and for some indeterminate date in the future. The defendant's position challenges both the plaintiff's claim for an increase in her permanent partial impairment rating of her lumbar spine and her claim for a lengthily period of pain and discomfort associated with plaintiff's TMJ claim. Defendant's position is premised on substantial evidence of a preexisting impairment to the plaintiff's back and certain inconsistences in the evidence supporting her claim for a temporo mandibular joint dysfunction. Defendant attacks the credibility of the plaintiff based upon the admissions of the plaintiff in her report of Continuing Disability Interview as well as her self serving statements at trial attributing all of her difficulties to the incident of May 24, 1996 and her admissions in her trial testimony that the statements made in her report of Continuing Disability Interview were untrue and made only for the purpose of obtaining social security benefits. The court's review of all the evidence offered in this case leads the courts ineluctably to the conclusion that plaintiff's pre-existing conditions contributed substantially to her present complaints.
The court concludes that though the incident of May 24, 1996 was a traumatic one and was a substantial factor in producing back pain, jaw pain, anxiety and emotional distress in the plaintiff that these conditions were limited in duration and caused no increase in the plaintiff's pre-existing permanent impairment rating of her lumbar spine.
The court finds that while the trauma of May 24, 1996 aggravated the plaintiff's back condition, her condition had stabilized as of October 30, 1997 when she re-injured her back while lifting at home. CT Page 13291
Although the plaintiff reported jaw pain to the emergency room physician on May 24, 1996, the physical examination of her jaw at that time provided limited support for her claim. The x-ray taken in the emergency room of her jaw showed no fracture of the mandibular joint with the mandibular condyles articulation normally. Furthermore the x-ray revealed the presence of an old metalic suture within the left mandibular body. The presence of this suture suggested an old fracture. Although the plaintiff reported an injury to her jaw in the emergency room, she apparently did not tell Dr. Brumberger about it on her first visit to him. Dr. Brumberger subsequently on December 5, 1997 referred her to the Easter Seals agency for TMJ therapy. The plaintiff received three treatments and was discharged on December 16, 1997, able to open mouth more fully with less pain. The first time the plaintiff sought dental treatment was on or about January 23, 1997 about eight months after the incident. At that time Dr. Frank indicated that he thought that most of her problems resulted from a periodontal condition and he treated her accordingly. In October of 1997 she was examined by Dr. Bailey and on palpation he found pain in her right temporo mandibular joint. He prescribed a muscle relaxing medication and made a temporo mandibular appliance to correct clenching and grinding of the patient's teeth. The doctor's report indicates that he felt Rosa's continuing pain was due to trauma caused by the dog attack and the emotional stress which is on going. At about that time she was also seen by Dr. Rozen who saw her on December 18, 1997, January 6, 1998, January 27, 1998, February 9, 1998 and March 7, 1998. Dr. Rozen caused an M.R.I. to be performed on the plaintiff on January 10, 1998 which was essentially negative. In January, 1998 the plaintiff reported to Dr. Bailey that she was able to chew but still had residual persistence soreness on her right side. The doctor examined her on March 6, 1998 and found her much better. In June of 1998 Dr. Bailey replaced her orthotic at which point she had misplaced.
The court finds that plaintiff's pain and suffering in her jaw continued for approximately two years and was not permanent in nature; that it was causally related to the incident of May 24, 1996 when the defendant's negligence resulted in trauma to plaintiff which aggravated a pre-existing condition in plaintiff's right jaw.
The court finds that the plaintiff has sustained her burden of proof that the defendant permitted his dogs to roam at large CT Page 13292 upon the land of another while not under the control of the owner or keeper. This negligence on the part of the defendant caused the plaintiff to be knocked to the ground by one of defendant's dogs and as a result of this trauma the plaintiff sustained certain injuries which the court characterize as a flare up of a pre-existing condition of her back and her jaw. The court further finds that the defendant has failed to prove that the plaintiff was negligent or that any negligence on the part of the plaintiff contributed to and was a substantial factor in producing plaintiff's injuries. The court concludes that while these injuries were not permanent in nature, they did cause the plaintiff's pain and suffering for approximately two and a half years and caused her to incur certain bills for medical expense and orthotic appliances.
Despite the extensive documentation of medical treatment received by the plaintiff the only bills which were submitted to the court were from Easter Seals for $420.00 and another from Dr. Bailey for $275.00 for a total of $695.00. The court concludes that it would be appropriate to award economic damages to the plaintiff in the amount of $695.00 and noneconomic damages for the pain and suffering of the plaintiff in the amount of $8,000.00. Judgment may enter for the plaintiff for $8,695.00, plus costs.
Dorsey, J. Judge Trial Referee